UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **GARRETT MCKENZIE, INC.** | * | **CIVIL ACTION NO.:** |
| | * | **2:25-cv-1782** |
| **Plaintiff** | * | |
| | * | |
| **VERSUS** | * | **DISTRICT JUDGE** |
| | * | |
| **STOPLOSS RESPONSE SERVICES LLC,** | * | |
| **STOPLOSS SPECIALISTS, LLC,** | * | |
| **SCOTT BUTAUD, and JOHN LEWIS** | * | |
| | * | **MAGISTRATE JUDGE** |
| | * | |
| **Defendants** | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

NOW COMES Plaintiff GARRETT MCKENZIE, INC. ("GM") and respectfully represents as follows:

## THE PARTIES

I.

Plaintiff GM is a corporation organized and existing under the laws of the state of Illinois and maintaining its principal place of business in Lake Forest, Illinois. Plaintiff GM leased equipment to the Defendants for the Defendants' use on construction projects in Louisiana, Texas, and Florida, for which equipment rentals Plaintiff has not been paid, and which non-payment by the Defendants forms the basis of this lawsuit.

II.

Plaintiff GM names the following Defendants:

A. Defendant STOPLOSS RESPONSE SERVICES LLC ("SL Response"), is a limited liability company organized and existing under the laws of the State of

    Louisiana, whose registered office is in St. Martin Parish. Defendant SL Response has a single member/manager: STOPLOSS LLC (also a Louisiana limited liability company). STOPLOSS LLC has two members/managers: (1) Defendant SL Specialists (whose ultimate owner, John Lewis, is a Georgia citizen) and (2) Command247 LLC (whose ultimate owner, Scott Butaud, is a Louisiana citizen). Acting together, Mr. Butaud and Mr. Lewis manage and control Defendant SL Response.

B. Defendant STOPLOSS SPECIALISTS, LLC ("SL Specialists"), is a limited liability company organized and existing under the laws of the State of Georgia, registered to do business in Louisiana which, in its application to do business in Louisiana, designated East Baton Rouge Parish as its principal business establishment in Louisiana. SL Specialists' ultimate owner is John Lewis, a Georgia citizen.

C. Defendant SCOTT BUTAUD is a Louisiana citizen domiciled in Vermillion Parish; and

D. Defendant JOHN LEWIS is a Georgia citizen, domiciled in Alpharetta, Georgia.

## JURISDICTION AND VENUE

III.

This court enjoys personal jurisdiction over all defendants for reasons including that the defendants purposefully established the requisite minimum contacts with this forum through their rental of and failure to pay for equipment used on their construction projects, including one in the Eastern District of Louisiana, and about which they have made misrepresentations to Plaintiff, which actions form the basis of this lawsuit.

IV.

This court enjoys diversity subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §1332 (a)(1) on the grounds that all plaintiffs are diverse from all defendants and the amount in controversy, exclusive of interest and costs, exceeds the jurisdictional requirements of $75,000. Plaintiff's citizenship, for diversity purposes, is Illinois. Based upon Plaintiff's reasonable information and belief, Defendants are citizens of Louisiana and Georgia.

V.

Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. §1391 (b)(2) because "a substantial part of the events or omissions giving rise to the claim [namely the rental of $226,002.69 of equipment that has not been paid for] occurred" in Hammond, Tangipahoa Parish, Louisiana, which is within the Eastern District of Louisiana.

**BACKGROUND**

VI.

Defendant SL Response has a single member/manager: STOPLOSS LLC (also a Louisiana limited liability company). STOPLOSS LLC has two members/managers: (1) Defendant SL Specialists and (2) Command247 LLC. SL Specialists is Defendant John Lewis' company, and Command247 LLC is Defendant Scott Butaud's company. Acting together, Mr. Butaud and Mr. Lewis manage and control Defendant SL Response.

VII.

At Defendant Butaud's request, on August 8, 2023, Plaintiff GM and Defendant SL Specialists entered into a written Master Services Agreement (the "SL Specialists MSA")

under which GM agreed to provide equipment rental and related labor services to SL Specialists pursuant to a detailed rate schedule. Defendant Butaud signed the SL Specialists MSA on behalf of SL Specialists holding himself out to be SL Specialists' Director of Global Operations. A copy of the SL Specialists MSA is attached hereto as Ex. 1.

VIII.

Subsequently, also at Defendant Butaud's request, on April 18, 2024, Plaintiff GM and Defendant SL Response, entered into a written Master Services Agreement (the "SL Response MSA") under which GM agreed to provide equipment rental and related labor services to SL Response pursuant to a detailed rate schedule. Defendant Butaud signed the SL Specialists MSA on behalf of SL Response holding himself out to be SL Response's C.O.O. A copy of the SL Response MSA is attached hereto as Ex. 2.

IX.

With respect to billing, payment, and non-payment, both of the MSAs Section 7, EQUIPMENT, LABOR, AND ALL OTHER PAYMENTS, states in pertinent part:

> Customer must remit payment to Garrett McKenzie for all equipment rentals and services rendered, inclusive of any applicable State, County, or Local sales tax based on the delivery address, within a period of thirty (30) calendar days from the date of the electronic sending of the invoice by Garrett McKenzie. If Customer opts to make payment via credit card on a charge account, Garrett McKenzie will impose a surcharge of three percent (3%) on such transactions. In the event of any disputed amounts, Customer must provide written notice to Garrett McKenzie within twenty (20) calendar days of the electronic sending of the invoice. If Customer fails to give the required twenty (20) calendar day notice, Customer shall be deemed to have irrevocably waived its right to dispute said amounts. Customer acknowledges and agrees that a service charge, not exceeding one- and one-half percent (1.5%) per month or the maximum rate permitted by Illinois law, shall be imposed on all delinquent accounts until they are paid in full. Furthermore, Customer shall indemnify Garrett McKenzie for all costs incurred in the collection of any overdue payments, including, but not limited to, reasonable attorneys' fees, costs, court costs and other legally related fees associated with the collection of overdue payments.

Garrett McKenzie shall not be bound by, adhere to, or recognize any payment arrangements made by the Customer with any third parties or non-signatories to this Agreement.

X.

Operating under the SL Response MSA, Defendant SL Response began renting equipment from GM on its different projects in Louisiana, Florida, and Texas. Between May and December 2024, GM provided rental equipment on the following SL Response projects:

Suburban Extended Stay Hotel – 3984 Barrancas Ave, Pensacola, FL

620 Morrison Blvd, Hammond, LA

12755 Southwest Fwy, Stafford, TX

9400 Bellaire Blvd, Houston, TX

XI.

All equipment provided by GM under the MSA was in good working order, and at no time did Defendants notify GM of any deficiencies in any of the equipment that was provided.

XII.

Pursuant to the SL Response MSA's designated and agreed equipment and labor rate schedule, GM issued multiple invoices for the equipment rental on the aforementioned projects as follows.

| Project | Total Invoiced | Paid | Balance Owed |
|---|---|---|---|
| 3984 Barrancas Ave, Pensacola, FL | $1,421,386.84 | ($634,722.60) | $786,664.24 |
| 620 Morrison Blvd, Hammond, LA | $226,002.69 | $0 | $226,002.69 |
| 12755 Southwest Fwy, Stafford, TX | $40,770.19 | $0 | $40,770.19 |
| 9400 Bellaire Blvd, Houston, TX | $332,274.46 | $0 | $332,274.46 |
|  | $2,020,434.18 | ($634,722.60) | **$1,385,711.58** |

A summary of the outstanding invoices is attached hereto as Ex. 3.

5

XIII.

Despite the MSA designating SL Response as the Customer for the equipment rentals, SL Response, acting through Butaud holding himself out as COO, directed GM to issue billings for these equipment rentals to one of SL Response's ultimate member/managers, SL Specialists (for which entity Butaud held himself out as Director of Global Operations).

XIV.

Other than GM's initial invoices issued on the Pensacola, FL Extended Stay Hotel Project between May and July 2024, neither SL Response nor SL Specialists has issued any further payment to GM, leaving an unpaid balance still owed in the amount of $1,385,711.58.

XV.

Despite all invoices being long past-due, amicable demand, and promises by Defendants that GM's outstanding invoices would be paid, no additional payments have been forthcoming.

XVI.

Taking on this engagement by SL Response and SL Specialists required GM to commit substantial amounts of its equipment inventory, funds, personnel, time, and other resources and precluded GM from undertaking other work.  Accordingly, Defendants' refusal to pay GM timely, or even at all, the sums owed has created significant financial hardship for GM.

XVII.

Defendants SL Response and SL Specialists, through a corporate shell game designed and directed by their principals, Defendants Butaud and Lewis, and improper transfers of funds out of the companies, have falsely claimed penury and refused to pay GM's legitimate, long past due invoices.

XVIII.

Defendants Butaud and Lewis have owned and operated multiple businesses in the construction and post-storm mitigation fields together and/or in affiliation, including Defendants SL Response and SL Specialists.

XIX.

Defendant Butaud has a demonstrable history of moving money and/or assets freely between different companies he owns and/or controls without any apparent legitimate business reason for the monetary transfers. Such transfers improperly impair the ability of his companies' creditors, like GM, to be paid their just debts, and unjustly enrich Defendant Mr. Butaud and/or his other companies.

XX.

On information and belief, which GM reasonably believes discovery will confirm, Defendant Lewis also has a demonstrable history of moving money and/or assets freely between different companies he owns and/or controls without any legitimate business reason for the monetary transfers. Such transfers improperly impair the ability of his companies' creditors, like GM, to be paid their just debts, and unjustly enrich Defendant Mr. Lewis and/or his other companies.

## **CAUSES OF ACTION**

### COUNT 1 – BREACH OF CONTRACT

XXI.

Plaintiff GM re-avers all allegations set forth in the preceding paragraphs I – XX as if set forth fully herein.

XXII.

The SL Response MSA under which GM rented equipment to SL Response and ultimate member/manager, SL Specialists, is valid and enforceable.

XXIII.

With both SL Response and SL Specialist's knowledge and consent and in reliance upon the SL Response MSA, Plaintiff GM provided substantial quantities of commercial equipment to SL Response and/or its affiliate and ultimate member/manager, SL Specialists.  Plaintiff GM performed well and faithfully all of the obligations GM agreed to perform under the SL Response MSA during the period between April and December 2024.

XXIV.

Notwithstanding Plaintiff GM's performance of its obligations under the SL Response MSA, Defendant SL Response and its ultimate member/manager, SL Specialists, breached the SL Response MSA by refusing to pay GM significant sums due to GM for the equipment rental and/or services provided by GM under the SL Response MSA.

XXV.

Defendant SL Response and its ultimate member/manager, SL Specialists, breached the SL Response MSA by not paying invoices on the following projects:

| Project | Total Invoiced | Paid | Balance Owed |
|---|---|---|---|
| 3984 Barrancas Ave, Pensacola, FL | $1,421,386.84 | ($634,722.60) | $786,664.24 |
| 620 Morrison Blvd, Hammond, LA | $226,002.69 | $0 | $226,002.69 |
| 12755 Southwest Fwy, Stafford, TX | $40,770.19 | $0 | $40,770.19 |
| 9400 Bellaire Blvd, Houston, TX | $332,274.46 | $0 | $332,274.46 |
| | $2,020,434.18 | ($634,722.60) | **$1,385,711.58** |

XXVI.

By virtue of its breach of the SL Response MSA, SL Response and its ultimate member/manager, SL Specialists, are justly and truly indebted unto Plaintiff GM for the $1,385,711.58 in past due and owing equipment rentals, with legal interest thereon, general and other economic damages due to their breaches of contract, attorney's fees to the fullest extent recoverable under the SL Response MSA and the law, and for all costs of these proceedings.

COUNT 2 – ACTION ON OPEN ACCOUNT

XXVII.

Plaintiff re-avers all allegations set forth in the preceding paragraphs I – XXVI as if set forth fully herein.

XXVIII.

At the Defendants' direction, GM submitted all of its invoices on the aforementioned projects to Defendant SL Specialists. GM submitted its invoices to SL Specialists on open account for equipment rented and/or services provided by GM to SL

Specialists and/or SL Response, and are valid, long past due, and owing by both SL Specialists and SL Response.

XXIX.

More than 30 days have elapsed since Plaintiff GM made written demand upon Defendant SL Response with a detailed statement of account; yet, SL Response has still not paid any of the sums due under GM's outstanding invoices. A copy of GM's written demand to SL Response is attached hereto as Ex. 4, and a Declaration Under Penalty of Perjury by GM's President, April Hughes, is attached hereto as Ex. 5.

XXX.

To the extent that GM's March 20, 2025 demand to SL Response (received by SL Response on March 27, 2025) is not deemed to be sufficient formal demand for payment on either or both SL Response or SL Specialists, service of Summons and this Complaint constitutes formal written demand for payment of the outstanding invoices under La. Rev. Stat. Ann. §9:2781.

XXXI.

Defendants SL Response and SL Specialists are justly and truly indebted unto Plaintiff GM for the $1,385,711.58 in past due and owing invoices submitted on open account, with legal interest thereon, attorney's fees to the fullest extent recoverable pursuant to La. Rev. Stat. Ann. §9:2781, general and other economic damages, and for all costs of these proceedings.

COUNT 3 – VIOLATIONS OF THE LOUISIANA UNFAIR TRADE PRACTICES ACT

XXXII.

Plaintiff re-avers all allegations set forth in the preceding paragraphs I – XXXI as if set forth fully herein.

XXXIII.

To establish a claim under the Louisiana Unfair Trade Practices and Consumer Protection Law, the plaintiff must suffer an ascertainable loss; and 2) the loss must result from a defendant's use of unfair methods of competition and unfair or deceptive acts or practices.  Any person who suffers an ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by La. Rev. Stat. Ann. §51:1405, may bring an action individually but not in a representative capacity to recover actual damages. In the event that damages are awarded under this Section, the court shall award to the person bringing such action reasonable attorney fees and costs. La. Rev. Stat. Ann. §51:1409(A).

XXXIV.

Defendants SL Response, SL Specialists, Butaud, and Lewis committed unfair or deceptive acts or practices in the conduct of trade or commerce in violation of La. Rev. Stat. Ann. §51:1405 by playing a corporate shell game with SL Response and SL Specialists; by having SL Response sign the MSA with Plaintiff GM, then directing GM to submit its invoices to SL Response's affiliate and ultimate member/manager, SL Specialists; and by moving money and/or assets freely between the different companies Butaud and Lewis own and/or control without a legitimate business reason for the

transfers, which transfers operate to improperly impair the ability of their creditors, like GM, to be paid their just debts, and which unjustly enrich Butaud, Lewis, and/or their other companies. GM has a justifiable good faith belief that discovery will establish that Defendants either concealed from or misrepresented to GM other material facts in connection with Defendants' trade or commerce in further violation of La. Rev. Stat. Ann. §51:1405.

XXXV.

Based upon their violation(s) of La. Rev. Stat. Ann. §51:1405, Defendants are liable to Plaintiff GM under La. Rev. Stat. Ann. §51:1409 for all actual damages caused by their misconduct, attorneys fees and costs, and additional statutory damages to the fullest extent recoverable under the circumstances.

COUNT 4 – CIVIL FRAUD

XXXVI.

Plaintiff re-avers all allegations set forth in the preceding paragraphs I – XXXV as if set forth fully herein.

XXXVII.

"Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." La. Civ. Code art. 1953. "Fraud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence." La. Civ. Code art. 1957. "The party against whom rescission is granted because of fraud is liable for damages and attorney fees." La. Civ. Code art. 1958

XXXVIII.

Defendants SL Response, SL Specialists, Butaud, and Lewis committed civil fraud in violation of La. Civ. Code Ann. art. 1953 by playing a corporate shell game with SL Response and SL Specialists; by having SL Response sign the MSA with Plaintiff GM, then directing GM to submit its invoices to SL Response's affiliate and ultimate member/manager, SL Specialists; and, upon reasonable information and belief, by moving money and/or assets freely between the different companies Butaud and Lewis own and/or control without a legitimate business reason for the transfers, which transfers operate to improperly impair the ability of their creditors, like GM, to be paid their just debts, and which unjustly enrich Butaud, Lewis, and/or their other companies.  GM has a justifiable good faith belief that discovery will establish that Defendants either concealed from or misrepresented to GM other material facts in further violation of Civil Code article 1953.

XXXIX.

Based upon their fraud in violation of Civil Code article 1953, Defendants are liable to Plaintiff GM under Civil Code article 1958 for damages and attorney's fees.

COUNT 5 – UNJUST ENRICHMENT AND DETRIMENTAL RELIANCE

XL.

Plaintiff re-avers all allegations set forth in the preceding paragraphs I – XXXVI as if set forth fully herein.

XLI.

In the alternative, Defendants have been unjustly enriched, to the impoverishment of Plaintiff GM, under La. Civ. Code art. 2298.

13

XLII.

To recover under a theory of unjust enrichment, the impoverishee must establish: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) the absence of justification or cause for the enrichment and impoverishment, and (5) that no other remedy at law is available for the impoverishee.

XLIII.

In the alternative, should it be determined that the MSA is invalid or otherwise unenforceable, Defendants have unfairly benefitted at Plaintiff GM's expense by Plaintiff having provided substantial quantities of equipment and/or services for or on behalf of Defendants during the period between May and December 2024 for which equity and good conscience demand that Defendants justly and fairly compensate GM.

**PRAYER**

WHEREFORE, Plaintiff GM prays that Defendants be summoned and served, and that after all delays and due proceedings had there be judgment rendered herein in favor of Plaintiff GM and against Defendants, jointly, severally, and/or in solido, as follows:

1. A money judgment for the $1,385,711.58 past due and owing based upon Defendants' breach of contract or on open account;

2. In the alternative, a money judgment for all sums found to be due and owing to GM due to Defendants' unjust enrichment at GM's expense or detriment.

3. Attorney's fees to the fullest extent recoverable under the MSA or pursuant to Louisiana law;

4. General damages and other economic damages sustained by GM due to Defendants' breach of contract, violation of the Louisiana Unfair Trade

       Practices and Consumer Protection Law, and/or civil fraud;

5. Additional Louisiana Unfair Trade Practices and Consumer Protection Law statutory damages to the fullest extent recoverable under the circumstances;

6. legal interest on all amounts recovered;

7. all costs of these proceedings; and

8. such other and further general and/or equitable relief to which Plaintiff may be entitled based upon the facts and circumstances presented.

Respectfully submitted, this 29th day of August, 2025,



David L. Browne (Bar No. 20729)
Cynthia M. Cimino (Bar No. 30874)
  *Of Counsel*
3330 West Esplanade Ave South - Suite 302
  *(Deliveries to Suite 301)*
Metairie, Louisiana 70002
Ph: (504) 648-0171
Fax: (504) 285-4093
Email: dbrowne@brownelaw.com
       ccimino@brownelaw.com

*Attorneys for Plaintiff*